250 N.W.2d 256 (1977)
In the Interest [CUSTODY] OF J. O., a child.
D. A. O., Plaintiff and Appellee,
v.
V. A. O., Defendant and Appellant.
Civ. No. 9305.
Supreme Court of North Dakota.
January 27, 1977.
*257 Kathryn L. Dietz, Wahpeton, for plaintiff and appellee.
Lanier, Knox & Olson, Fargo, for defendant and appellant; argued by P. W. Lanier, Jr., Fargo.
ERICKSTAD, Chief Justice.
In this case, the defendant asks us to stay an order of the District Court of Sargent County, granting temporary custody of a minor child to its paternal grandparents. The request is brought by the child's natural mother under Rule 62(l), N.D.R.Civ.P.
V. O. and D. O. were married on August 21, 1971. They lived together with their son J. O. in their home in a community in Sargent County until the latter part of July, 1976, at which time V. O., the mother and defendant in this action, moved to Fargo. She did not take the child with her at that time. D. O., the father of J. O., immediately took his son and moved in with his own parents, who live in the same community.
D. O. commenced a divorce action in November of 1976, and on November 12, V. O. was served with a Summons, Complaint, Order to Show Cause, and Affidavit in Support of Order to Show Cause. A hearing on the Order to Show Cause was held on December 9, 1976, in order to determine temporary custody of the child pending a hearing to determine the issues of divorce and child custody. An Order was issued by the District Court on December 10, 1976, awarding temporary custody of the child to the parents of D. O., permitting V. O. visitation rights, and requiring D. O. to make monthly installment payments to his parents for the care of the child. A Notice of Appeal from this Order was filed with the District Court on December 13, and at that time an application was made to that court for stay of the Order pending appeal. The *258 application was denied, and a similar request was made to this court.
Our power to grant such a request is recognized in the North Dakota Rules of Civil Procedure:
"The provisions in this rule do not limit any power of an appellate court or of a judge or justice thereof to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered." Rule 62(l), N.D.R.Civ.P.
We are informed that the Order we are requested to stay was executed, in that the child J. O. was transferred to the custody of his grandparents, prior to our being asked to act on the matter. This raises the question of just what is the status quo to be preserved under Rule 62(l)? Is it the status quo just prior to the Order of the trial court, when the child was in his mother's custodyor is it the status quo at the time we were requested to stay the Order?
We are aware that a refusal to stay a lower court's order because its execution has altered the status quo would weaken our authority in situations like this. However, this consideration cannot be deemed determinative, and is indeed overshadowed by the paramount concern in custody cases for the best interests of the child. See, e. g., Kottsick v. Carlson, 241 N.W.2d 842 (N.D.1976); Matson v. Matson, 226 N.W.2d 659 (N.D.1975); Jordana v. Corley, 220 N.W.2d 515 (N.D.1974).
We need not become bogged down in a technical analysis of what is the status quo. Rule 62(l), N.D.R.Civ.P., supra, is not jurisdictional. This court has an inherent and constitutional power to act in preservation of its jurisdiction. N.D.Const. art. IV, § 87; Section 27-02-04, N.D.C.C.; Brusegaard v. Schroeder, 199 N.W.2d 921, 923-24 (N.D.1972).
At the show cause hearing there was much uncontradicted testimony regarding living conditions in the couple's home. It appears that neither D. O. nor V. O. were home very much in the evenings. Two teenage girls testified that they babysat with J. O. quite often, and that the child's mother, V. O., would buy them beer to get them to babysit when they were reluctant. The babysitters testified that the house was filthythat there were unwashed moldy pans in the kitchen and that the child's bed was dirty most of the time and smelled strongly of urine. D. O. testified that his wife seldom cooked meals and that the most J. O. got for dinner was peanut butter sandwiches.
There is some dispute as to who had custody of J. O. at various times since late July of 1976. D. O. and both his parents testified that, after she left for Fargo, V. O. did not come to get the child until about two months later. V. O. did not testify at the hearing, but stated in an affidavit that she brought the child to Fargo in early Augustshortly after she left her husband. It appears that J. O. was moved back and forth for a period of time. The parties agree that the child became ill and stayed at D. O.'s parent's home from late October until November 7, at which time V. O. brought the child to Fargo without informing D. O. or his parents. The Order to Show Cause was served upon her shortly thereafter.
There was no evidence presented as to the environment provided for J. O. by his mother while in Fargo.
The child's paternal grandparents testified that they are in good health and willing to have J. O. in their home. The court then indicated the possibility of awarding custody to the grandparents rather than to D. O. or V. O. The grandfather stated that he would be willing to assume that obligation and would exercise judgment independent of D. O. or V. O. to protect the child.
We are urged on one hand to treat this action as a trial de novo and, on the other, to apply Rule 52(a), N.D.R.Civ.P., which dictates that the lower court's findings of fact not be set aside unless found clearly erroneous. We do not at this time adopt either position. For the purposes of *259 our determination of whether to stay this Order pending appeal, we give appreciable weight to the decision of the trial court.
In light of the trial court's apparent finding that a change of custody was in the best interest of the child, considering that the child has now been in the custody of its grandparents since December 14, 1976, that the trial court was satisfied that they could properly care for the child, and that we have been shown little to allay our misgivings about the stability of conditions for the child if put in custody of its mother in Fargo, we decline to order yet another custody change. See, e.g., In the Interest [Custody] of D. G., a Child, 246 N.W.2d 892 (N.D.1976); Jordana v. Corley, 220 N.W.2d 515 (N.D.1974).
In the best interests of the child, we urge the parties to bring the matter of the complaint and answer before the trial court at the earliest opportunity for a determining of all issues including custody of the child. For the same reasons, we urge the trial court to facilitate the hearing of this matter as soon as possible.
For the reasons stated in this opinion, the application for a stay of the Order of the trial court pending appeal is denied.
VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.